UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10374-DPW |
| | ) | |
| **EDUARDO RODRIGUEZ** | ) | |

### GOVERNMENT'S MOTION IN LIMINE

The government hereby respectfully submits its Motion in Limine. By this motion, the government seeks a ruling from this Court that certain evidence is admissible at the trial of this matter, in which the defendant is charged with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). Specifically, the government seeks a ruling that both evidence of the defendant's possession of firearms and evidence explaining the police response to the defendant's residence on the morning of August 28, 2004 is admissible. For the reasons set forth below, each category of evidence satisfies the requisites of Fed. R. Evid. 404(b) and should be admitted.

### BACKGROUND

The defendant in this case is charged with being a felon in possession of ammunition, which was recovered from his bedroom in a half-way house early in the morning of August 28, 2004. The following recitation includes not only evidence that the government expects to introduce at trial but also information that is provided to assist the Court in the consideration of this motion.

Early in the morning of August 28, 2004, the Brockton Police Department received a complaint that the defendant had inappropriately touched, and then assaulted with a metal object, the 15-year-old daughter of the woman with whom he had fathered two younger children. The police responded to the residence of the young girl and spoke with her and her mother. They told the police, among other things, that the defendant lived at 285 Green Street, having last lived with them approximately two years earlier. The mother also told the police, among other things, that the defendant was known to have one or two guns in his possession and was known to sleep with one under his pillow.

The police then proceeded to 285 Green Street. Officers Gaucher and Drane entered as Officer Kirby watched the back of the building. After several minutes another occupant of the defendant's apartment unit responded to knocking and, upon learning the officers were seeking the defendant, allowed them in and pointed out the defendant's bedroom. The officers approached the room, the door to which was partially ajar, and yelled in for the defendant by name. The defendant jumped out of bed, leaving behind a woman. The defendant came to the door and, when the police told him they wanted to speak to him about a private matter, led the police to the hallway to the second floor of the building.

Officer Gaucher advised the defendant of his _Miranda_ rights,

and the defendant agreed to speak to the police. The police told the defendant that they were there to investigate an allegation that the defendant had committed an indecent assault and battery. The defendant told the police he had been at a club in Boston with the woman in his room, and denied having been at the victim's residence a short while earlier.

Officer Gaucher then asked the defendant whether he had any weapons in his room. The defendant denied that he did. The defendant gave the police his consent to search his room. Officer Drane went into the bedroom and began speaking with the woman in the bed (who, upon emerging, proved to be fully clothed), as Officer Kirby arrived at the second floor hallway. The police again confirmed with the defendant that he consented to their searching his bedroom, the defendant telling the police that he had "nothing to hide."

Two of the officers then searched the defendant's bedroom. They located an empty leather-like gun case under the bed. On the floor near a television, the police found a box containing 9mm ammunition and another box containing .357 caliber ammunition, the items referred to in the indictment. The police also recovered from the bedroom, among other things, three bags of heroin; $1,910 in cash in a cloth bag; another $184 in cash in the pocket of a pair of pants; and various pieces of identification appearing to bear the defendant's photograph but

bearing the name, not only of the defendant, but also of his brother and a "Frank Rosario." The police also recovered four firearms from under the cushions of a sofa in a common area of the defendant's apartment. The government has not charged the defendant with possession of these firearms.

The defendant was arrested and taken to the Brockton Police Department. Two ATF agents approached the defendant and, after being advised again of his Miranda rights, the defendant agreed to speak with the agents. Among other things and in substance, he told the agents that he had bought three firearms, including a .357 caliber handgun and a 9mm handgun, approximately four days earlier from the brother of a neighbor for $900. The defendant told the agents that this same person also obtained ammunition for the firearms for the defendant, for which he paid $20 per box.

The seller of the firearms has been located and pled guilty to state charges relating to the sale. According to the seller, he sold three firearms to the defendant at 285 Green Street for $250 each: a .357 caliber Ruger, a COP Derringer, and a 9mm pistol. He returned to 285 Green Street either later that day or the following day and provided two boxes of ammunition to the defendant for $10 each: a box of .357 caliber ammunition, and a box of 9mm ammunition.

## ARGUMENT

**A.   Rule 404(b)**

Rule 404(b) provides, in pertinent part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident..."  Fed. R. Evid. 404(b).  The First Circuit has recognized that the rule is to be interpreted broadly.  See United States v. Fields, 871 F.2d 188, 196 (1st cir. 1989)("'the range of relevancy outside the ban is almost infinite; and further, . . . the purposes are not mutually exclusive for the particular line of proof may fall within several of them'"), quoting McCormick, Evidence § 190, at 448 (Cleary, ed. 1992).

The First Circuit recognizes a two-step process for determining the admissibility of evidence under Rule 404(b). See, e.g., United States v. Frankhauser, 80 F.3d 641, 648 (1st Cir. 1996).  First, this Court must determine whether the evidence offered is probative of, i.e., has "special relevance" to, a material issue other than character.  Id.; see also United States v. Williams, 985 F.2d 634, 637 (1st Cir. 1993)(trial court must first determine whether evidence has any "special relevance" to material issue).  If the evidence does have special relevance,

5

the Court must conduct an analysis under Fed. R. Evid. 403 to determine whether the probative value of the proffered evidence is "substantially outweighed by the danger of unfair prejudice." Huddleston v. United States, 485 U.S. 681, 687 (1988)(emphasis added); see United States v. Ferrer-Cruz, 899 F.2d 135, 138 (1st Cir. 1990)("similar act" evidence survives Rule 404(b)'s absolute ban against "bad character" evidence where at least one permissible inference possible); United States v. Mazza, 792 F.2d 1210, 1222 (1st Cir. 1986)(where "prior act" evidence proves relevant to legitimate issue, such evidence admissible subject only to balancing test of Rule 403).

This does not mean, of course, that evidence should be excluded under Rule 403 simply because it is prejudicial. All evidence, if it is relevant, is in some sense "prejudicial"; Rule 403, however, is concerned only with "unfair prejudice," which is limited to evidence that carries a genuine risk "that the emotions of the jury will be excited to irrational behavior, and that the risk is disproportionate to the probative value of the evidence." United States v. Fahey, 769 F.2d 829, 849 (1st Cir. 1985), quoting United States v. Zeuli, 725 F.2d 813, 817 (1st Cir. 1984)); cf. United States v. Guyon, 27 F.3d 723, 729 (1st Cir. 1984)("We agree that this evidence, like most evidence offered against a defendant, is prejudicial. . . . [T]he question is whether the probative value of the evidence was substantially

outweighed by the danger of undue prejudice").

**B.    Evidence of the Defendant's Possession of Firearms**

Under these principles, evidence of the defendant's possession of firearms should be admitted at his trial for being a felon in possession of ammunition.  Two of the explicitly enumerated permissible uses of 404(b) evidence are to prove knowledge and motive.  The First Circuit, moreover, has expressly countenanced the use of 404(b) evidence as proof of knowledge and motive in a felon-in-possession prosecution.  Specifically, in United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002), the First Circuit concluded that evidence of the defendant's uncharged drug dealing at the location from which a firearm was recovered "provide[d] [among other things] a compelling motive for possessing the gun, namely, to protect [the defendant's] drugs and drug money."  See also, e.g., United States v. Till, 434 F.3d 880, 883-84 (6th Cir. 2006)(evidence of uncharged drug possession properly admitted is felon-in-possession trial as proof of motive for possessing firearm).

Here, the proffered evidence is particularly probative.  The fact that the defendant acquired both a .357 caliber handgun and a 9mm handgun explains why the defendant would also have desired to obtain ammunition of the types found in his bedroom, and also helps to satisfy the government's burden of proving beyond a reasonable doubt that the defendant's possession of the

7

ammunition was knowing. In the absence of such evidence, the jury would be left to wonder why the defendant would want to possess ammunition without firearms, and potentially to determine that there is a reasonable doubt as to whether he did so.

The probative value of the evidence, moreover, is not substantially outweighed by the danger of unfair prejudice, and certainly is not of an ilk that would tend to excite a jury to irrational behavior. Indeed, the potential for unfair prejudice is significantly less than was the case in Smith, where evidence of the defendant's drug dealing, while appropriately admitted, was of a wholly different nature than the charged gun offense. Here, a jury would be neither shocked nor surprised to find that a person who was charged with possessing ammunition had also possessed firearms. To the contrary, as noted above, a jury would more likely be surprised by a lack of evidence that a person charged with possessing ammunition also had a connection to guns.

Accordingly, the government respectfully seeks a ruling that evidence of the defendant's firearms possession is admissible at his trial. Specifically, the government seeks to introduce evidence that the police found an empty gun case under the defendant's bed; that the defendant admitted to having bought firearms four days prior to the search, including a .357 caliber handgun and a 9mm pistol; and that the seller confirms having

sold the defendant three firearms, including a .357 caliber gun and a 9mm gun, as well as a box of .357 caliber ammunition and a box of 9mm ammunition.

**C.     Evidence of Police Response to 285 Green Street**

The government also seeks a ruling that evidence providing context for the police response to 285 Green Street is admissible.  The government does not seek to offer evidence that the defendant allegedly touched a 15-year-old girl inappropriately or that the defendant allegedly assaulted her. The government does, however, seek to offer evidence that the police received a complaint from civilians early in the morning of August 28, 2004, and went to the defendant's residence in order to investigate the allegations.

Other circuits have ruled that 404(b) evidence is admissible to explain a witness's conduct.  See, e.g., United States v. Miller, 895 F.2d 1431, 1435-37 (D.C. Cir. 1990); United States v. Lewis, 701 F.2d 972, 975 (D.C. Cir. 1983); United States v. Scarfo, 850 F.2d 1015, 1021 (3d Cir. 1988); United States v. Foster, 889 F.2d 1049, 1053 (11th Cir. 1989); but see, e.g., United States v. Wesevich, 666 F.2d 984, 988 (5th Cir. 1982). Here, the proffered evidence is intended to provide the jury with necessary context.  In the absence of the proffered testimony, the jury would undoubtedly wonder why the police went to the defendant's residence in the early morning hours of August 28,

2004, and could unfairly surmise that the police had no legitimate reason for doing so.

Again, the evidence, in the form proffered, does not run the risk of unfair prejudice. Indeed, to further minimize any potential for unfair spillover, the jury could be instructed that it cannot speculate regarding the nature of the complaint that prompted the police response, and that the evidence is being adduced solely to explain why the police went to that location at that time and sought to speak with the defendant.

## **CONCLUSION**

For the foregoing reasons, the Court should allow the within motion.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By: /s/Robert E. Richardson
ROBERT E. RICHARDSON
Assistant U.S. Attorney

### Certificate of Service

I, Robert E. Richardson, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 16, 2006.

/s/Robert E. Richardson
ROBERT E. RICHARDSON