UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 04-10374-DPW |
| ) | |
| EDUARDO RODRIGUEZ ) | |

**SENTENCING MEMORANDUM**

Defendant Eduardo Rodriguez submits this sentencing memorandum to assist the court in determining the appropriate sentence. For the reasons set forth in detail below, the court should sentence Mr. Rodriguez to a total term of incarceration of 48 months. That sentence is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2). It is a sentence that reflects the seriousness of the offenses of conviction, promotes respect for the law, provides just punishment, affords adequate deterrence and protects the public from further criminal conduct by Mr. Rodriguez. A longer term of incarceration would be greater than necessary to accomplish those goals.

**Argument**

**I.    The Court Is Required To Impose A Sentence Sufficient But Not Greater Than Necessary To Comply With the Purposes Set Forth in 18 U.S.C. § 3553(a)(2)**

After *Booker*, a sentencing court must impose a sentence minimally "sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. § 3553(a)(2). 18 U.S.C. § 3553(a). *See also United States v. Foreman*, 436 F.3d 638, 643-44 & n.1 (6th Cir. 2006) ("a district court's mandate is to impose "a sentence sufficient, but not greater than necessary, to comply with the purposes" of section

3553(a)(2)"); *United States v. Cawthorn*, 419 F.3d 793, 802 (8th Cir. 2005) ("district court's duty" is that it "shall impose a sentence sufficient but not greater than necessary"). The court is required to consider the following sentencing factors:

> **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> **(2)** the need for the sentence imposed--
>
>> **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant; and
>>
>> **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> **(3)** the kinds of sentences available;
>
> **(4)** the kinds of sentence and the sentencing range established for--
>
>> **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the [United States Sentencing G]uidelines--
>>
>> …
>
> **(5)** any pertinent policy statement--
>
>> **(A)** issued by the Sentencing Commission …
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

A 48-month sentence would be consonant with all of the sentencing factors set forth in § 3553 and would recognize that Mr. Rodriguez is a flesh and blood individual

who stands before the court at a particular point in his unique life.  Even when the Sentencing Guidelines were mandatory, the First Circuit Court of Appeals emphatically emphasized that this should be the goal of a sentencing judge:

> [T]he guidelines provide uniformity, predictability, and a degree of detachment lacking in our earlier system.  This too must be remembered, however.  It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and punishment to ensue.

*United States v. Olbres*, 99 F.3d 28, 36-37 (1st Cir. 1996) (citation omitted).

### A. A 48-Month Sentence Is Appropriate Given the History and Characteristics Of the Defendant

At one point during the presentence interview, Mr. Rodriguez paused and remarked the he had spent a large portion of his adult life in jail.  "Isn't that sad," he remarked.  It was apparent from Mr. Rodriguez' manner that this was the first time he had reflected on the consequences of the choices he has made about how to live his life.  He has come to realize, for the first time in his life, that he has the power and the ability to make better decisions and avoid the consequences of drug addiction and crime.

No doubt Mr. Rodriguez has made poor choices.  He reluctantly left rural Puerto Rico with his family at age 13 and was thrown into the completely unfamiliar rough and tumble streets of Newark New Jersey.  Mr. Rodriguez quickly became the target of violent bullies.  He reasoned, poorly, that the only way to get respect was to be like the bullies.  *See* PSR at ¶ 58.  His criminal behavior continued and escalated as he got older.

There can also be no doubt that Mr. Rodriguez has paid dearly for his criminal conduct in New Jersey.  His first adult case, at age 19, resulted in a conviction for

receiving stolen property and a relatively heavy three-year committed sentence. His second adult case, also at age 19, resulted in a seven year committed sentence for aggravated assault and possession of a weapon. Although those two sentences ran concurrently, they are relatively heavy sentences for a 19 year-old first and second time offender.

Mr. Rodriguez also received a relatively heavy three-year total sentence for a Massachusetts adult conviction, possession with intent to distribute cocaine and distribution in a school zone. In the experience of undersigned counsel, many defendants who agree to plead guilty, as Mr. Rodriguez did, escape enhanced punishment for school zone violations and those counts often are dismissed. Not in Mr. Rodriguez' case.

Many defendants stand before this court at sentencing and proclaim that they have seen the errors of their ways and are ready to turn their lives around. The court should have confidence that Mr. Rodriguez means it when he says it, and not just because of his epiphany during the presentence interview. The idea of many more years in prison was so intolerable to Mr. Rodriguez that he made preparations to take his own life in the event this court were to impose a fifteen-year mandatory minimum sentence. *See* PSR at ¶ 69. The lengths to which Mr. Rodriguez was willing to go to avoid a lengthy sentence strongly suggest that he will be motivated to make the right decisions and stay out of situations that could return him to jail once he finishes serving whatever sentence this court will impose.

Mr. Rodriguez has every reason to turn his life around. He recently got married to a woman with whom he has had an off and on relationship over the past ten years. She has a stable life, working in the computer field and residing in Stoughton, where Mr.

Rodriguez will reside upon his release. He will be able to avoid returning to Brockton and exposing himself to the temptations of drugs and crime that were his life there.

### B. A 48-Month Sentence is Sufficient But Not Greater Than Necessary To Comply With The Sentencing Factors Set Forth In 18 U.S.C. § 3553(a)(2)

A 48-month sentence is sufficient to promote respect for the law, to provide just punishment for the offense and to afford adequate deterrence to criminal conduct. *See* 18 U.S.C. § 3553 (a)(2)(A) and (B). It is also more than sufficient to specifically deter Mr. Rodriguez from committing another crime.

Mr. Rodriguez exhibits several characteristics that the Sentencing Commission has identified as indicators of reduced rates of recidivism. He is relatively old (35) and he is married with children. Two recent studies conducted by the Sentencing Commission, entitled <u>Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines</u> (hereinafter "Release 1"), http://www.ussc.gov/publicat/Recidivism_General.pdf; and <u>A Comparison of the Federal Sentencing Guidelines Criminal History Category and the U.S. Parole Commission Salient Factor Score</u> (hereinafter "Release 2"), http://www.ussc.gov/publicat/RecidivismSalientFactorCom.pdf, include the following findings:

- Age: "Recidivism rates decline relatively consistently as age increases," from 35.5% under age 21, to 9.5% over age 50.[1] Under the Parole Commission's Salient Factor Score (SFS), which is a better predictor of recidivism than Criminal History Category, the older the defendant is and the fewer the number of prior commitments, the less likelihood of recidivism. Age is a powerful component of recidivism prediction, which the Guidelines do not take into account.[2]

---

[1] Release 1 at 12 & Exhibit 9.

[2] Release 2 at 8, 13-15.

- Family: Recidivism rates are associated with marital status (never married, divorced, married).[3]

## Conclusion

For all of the foregoing reasons, the court should impose a sentence of 48 months. That sentence is sufficient, but not greater than necessary, to satisfy the statutory sentencing factors.

EDUARDO RODRIGUEZ<br>
By his attorney,<br>
<br>
/s/ *E. Peter Parker*<br>
E. Peter Parker<br>
B.B.O. #552720<br>
151 Merrimac Street<br>
Boston, MA  02114<br>
(617) 742-9099

## Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on January 22, 2007.

/s/ *E. Peter Parker*
E. Peter Parker

---

[3] *Id.* at 12 & Exhibit 10.